■ MARY ANTHONY, Appellant, v NEW YORK CITY LOFT BOARD et al., Respondents. MARY ANTHONY, Petitioner, v NEW YORK CITY LOFT BOARD et al., Respondents.—Judgment and order of transmittal (one paper), Supreme Court, New York County (Robert E. White, J.), entered May 14, 1985, insofar as it granted the cross motion of respondents-respondents William Muschel and William Muschel, Inc. seeking dismissal of Mary Anthony's petition as to them, unanimously modified, on the law, without costs, to deny the cross motion in part and restore William Muschel, Inc. as a party respondent, and, as modified, affirmed.

Determination of respondent-respondent Loft Board of the City of New York, dated June 13, 1984, which granted the application of William Muschel, Inc. to the extent of finding that the seventh floor of its building at 736 Broadway, occupied by petitioner Mary Anthony, is not subject to Multiple Dwelling Law article 7-C, unanimously confirmed, without costs, and the petition is dismissed.

In its remand order number 96, respondent Loft Board determined that petitioner Mary Anthony's seventh-floor

dance studio at 736 Broadway was not covered by Multiple Dwelling Law article 7-C, otherwise known as the Loft Law. Following the Loft Board's denial of petitioner's application for reconsideration, petitioner commenced the within CPLR article 78 proceeding alleging that the Loft Board determination was arbitrary and irrational. In addition to the Loft Board, petitioner named as parties respondent the owner of the subject premises, William Muschel, Inc., and its principal, William Muschel, the grant of whose application for a determination of noncoverage as to Ms. Anthony's loft is here reviewed. Special Term dismissed the petition as to William Muschel and his corporation since Muschel had not been served by the December 14, 1984 deadline provided by Justice Hughes in the order to show cause signed by him on December 13, 1984. Although Muschel, who was out of the country, was not timely served, valid service was made within the allotted time upon his corporation. Pursuant to CPLR 311 and Business Corporation Law § 306, a corporation may be served by serving the Secretary of State. As petitioner did this on December 14, 1984, the corporation was properly served and its motion to dismiss the petition as to it on jurisdictional grounds should have been denied.

Turning now to the merits of the within petition transferred to us for disposition pursuant to CPLR 7804 (g), it is apparent on a review of the record that the determination of the Loft Board after extensive initial and remand hearings is supported by substantial evidence and must, therefore, be confirmed. (CPLR 7803 [4]; *Matter of Pell v Board of Educ.* 34 NY2d 222, 230-231.)

The Loft Law (Multiple Dwelling Law § 280 *et seq.)* was enacted to address problems caused by the widespread illegal conversion of commercial and manufacturing loft buildings to residential use. As a result of these unauthorized conversions, often accomplished without adherence to residential building codes and laws, tenants frequently occupied substandard and unsafe living accommodations concerning which there was little basis for legal recourse due to the initially unsanctioned nature of the residential tenancies involved. Recognizing that the displacement of loft dwellers would result in tremendous hardship given the acute housing shortage, and that loft dwellers should not be deprived unjustly of benefiting from the improvements made by them in converted premises, the Legislature, with the passage of the Loft Law, provided a framework for legitimizing the residential occupancy of con-

verted commercial loft space and for clarifying the rights and obligations of residential loft tenants and landlords.

To come within the protective scope of the Loft Law, it must be established, *inter alia,* that a structure or portion thereof, formerly used for commercial purposes, was, between April 1, 1980 and December 31, 1981 (the window period), occupied for residential purposes as the residence or home of any three or more independently living families (Multiple Dwelling Law § 281). For a unit to qualify as a residence under Multiple Dwelling Law § 281 it must possess sufficient indicia of independent living to demonstrate its use as a family residence (coverage regulation promulgated pursuant to Multiple Dwelling Law § 281). It is then not enough to show residential use alone. The showing of residential use must be accompanied by a showing that the formerly commercial premises, the domestic use of which is claimed, physically reflect that use, i.e., that the premises have been converted, at least in part, into a dwelling *(see, Loft Realty Co. v Aky Hat Corp.,* 123 Misc 2d 440 [Civ Ct, NY County], *affd* 131 Misc 2d 541 [App Term, 1st Dept]).

The evidence presented by petitioner as to her loft's domestic occupancy and conversion to residential purposes during the above-mentioned "window period" was equivocal. Petitioner originally leased the subject loft in 1969 for use as a dance studio. From that time to the present the loft has contained an area segregated from the open studio space which is variously described as a lounge, reception area, living room and/or dining room. Petitioner testified that for eight of the 21 months in the 1980-1981 window period, during which intense performance preparation necessitated her constant attendance at the studio, she used this area as her residence, only returning occasionally to the 14th Street apartment where she ordinarily resided. Petitioner also testified that colleagues and students of hers lived in the studio during much of the remaining portion of the window period. Only one of these residents, a Mr. Peter Woodard, testified at the Loft Board hearings. He stated that he lived in the studio from January until May 1981. It does not appear, however, that Woodard did much more than sleep there since the loft's lack of bathing facilities forced him to shower elsewhere and its lack of cooking facilities, apart from a hot plate, necessitated that he dine out frequently.

At best, the record discloses that during the critical window period petitioner's loft was occupied on and off for months at a time. The nature of the occupancy was, however, not indica-

tive of "independent living". Rather, the occupancy seems to have been exclusively as an incident to the essentially commercial activities of petitioner's dance studio. Those who stayed at the studio did so not to establish an independent home there, but as a temporary convenience to facilitate their attendance, study and work at the studio. The loft's lack of basic amenities such as a bath, a shower, and a stove, and petitioner's maintenance of permanent living quarters elsewhere support the view that prolonged residential use of the loft independent from its commercial use was not contemplated during the window period. The protection of the Loft Law, however, extends only to predominantly residential uses with an integrity apart from possibly adjacent commercial activities. When, as here, the residential use appears to be only an incident to the commercial use it is not of a sufficiently distinct character to warrant Loft Law coverage (cf. Loft Realty Co. v Aky Hat Corp., supra).

Inasmuch as the Loft Board's inference as to the nature of the subject studio's use and occupancy is, in our view, rationally based in the substantial evidence adduced during two hearing sessions and what appears to be a thorough consideration of the pertinent issues, the administrative determination under review must be confirmed. (Matter of Pell v Board of Educ., supra.) Concur—Murphy, P. J., Sandler, Lynch, Kassal and Ellerin, JJ.