OPINION OF THE COURT
Per Curiam.
Final judgment entered October 17, 1985 reversed, with $30 *563 costs, and final judgment of possession granted in favor of the petitioner.
The premises which is the subject of the instant holdover proceeding is a 625-square-foot artist’s studio located on the tenth floor of the building premises situated at 648 Broadway, Manhattan. The space is divided into a main room used by the tenant for painting and a smaller corner space (5 feet by 8 feet) used for living purposes. The premises has no bathroom or kitchen. The tenant uses a toilet in the common hall and bathes at a New York University health club located across the street. He has a hot plate to cook food and a machine which heats cold water to provide a limited supply of hot water for cooking and washing; there is no sink. The machine, like the hot plate, is not affixed to the premises.
There is no dispute that at the time of this proceeding the building had been designated an interim multiple dwelling under Multiple Dwelling Law article 7-C because of the conversion of space on other floors to residential use by other tenants. There is also little dispute that tenant was living on the premises during the "window period” prescribed under article 7-C (Multiple Dwelling Law § 281 [1]). In dismissing the petition, Civil Court held that tenant’s residential use of the space was sufficient for coverage under the Loft Law, and that physical alteration of the space was not a necessary predicate for protection under the statute.
The Legislature’s objective in enacting the Loft Law was to protect occupants who primarily reside in interim multiple dwellings rather than those whose use is essentially commercial and only incidentally residential (Matter of Lower Manhattan Loft Tenants v New York City Loft Bd., 66 NY2d 298, 303). The Loft Law "provided a framework for legitimizing the residential occupancy of converted commercial loft space and for clarifying the rights and obligations of residential loft tenants and landlords” (Anthony v New York City Loft Bd., 122 AD2d 725, 726-727). However, it is not every limited residential use of commercial loft space which will qualify for coverage. "The showing of residential use must be accompanied by a showing that the formerly commercial premises, the domestic use of which is claimed, physically reflect that use, i.e., that the premises have been converted, at least in part, into a dwelling” (Anthony v New York City Loft Bd., supra, at 727). In this case, tenant’s residential use of the space is secondary to the primary use as a place of work. There is no showing that the premises have been "converted” to residen *564 tial use to any meaningful degree or that improvements have been made to adapt the premises for living purposes (see, Loft Realty Co. v Aky Hat Corp., 131 Misc 2d 541). Only a small portion of the total demised space is allocated to tenant’s residential needs, and it is clear that the space lacks the essential amenities appurtenant to units configured for dwelling purposes. Since the protection of the Loft Law "extends only to predominantly residential uses with an integrity apart from possibly adjacent commercial activities” (Anthony v New York City Loft Bd., supra, at 728), and since the character of the space in question remains overwhelmingly commercial, tenant is not a covered residential occupant and petitioner is entitled to judgment on the holdover petition.
Ostrau, P. J., Sandifer and McCooe, JJ., concur.