Defendant Sokolowsky occupies a unit on the 5th floor of the building. His lease, effective September 1, 2007, states that the premises were to be used as an office and that he resided elsewhere.
Effective June 21, 2010, the Loft Law was amended to add *607 Multiple Dwelling Law § 281 (5) (L 2010, ch 147, § 1), which created a new qualifying window period under which residential units may qualify for coverage as IMDs. Section 281 (5) defines an IMD as any building that: (1) at any time was occupied for manufacturing, commercial, or warehouse purposes; (2) lacks a certificate of compliance or occupancy (CO) pursuant to section 301 of the chapter; (3) is not owned by a municipality; and (4) was occupied “as the residence or home of any three or more families living independently from one another for a period of twelve consecutive months during the period commencing” January 1, 2008, and ending December 31, 2009, provided that the unit (i) is not located in a basement or cellar and has at least one entrance that does not require passage through another residential unit to obtain access to the unit, (ii) has at least one window opening onto a street or a lawful yard or court as defined in the zoning resolution for such municipality, and (iii) is at least 550 square feet in area.
In determining whether or not a structure is an IMD, the proponent for coverage bears the burden of proving that three units were residentially occupied as required by the statute during the window period (see Laermer v New York City Loft Bd., 184 AD2d 339 [1st Dept 1992], lv denied 81 NY2d 701 [1992]). In order for a unit to qualify as a covered residence, “it must possess sufficient indicia of independent living to demonstrate its use as a family residence” (Anthony v New York City Loft Bd., 122 AD2d 725, 727 [1st Dept 1986]). This includes a showing that the premises have been converted, at least in part, into a dwelling (id.). Where only a small portion of the space is devoted to residential use, and residential amenities are lacking, the premises are not covered (see Matter of Amann v New York City Loft Bd., 262 AD2d 234, 234-235 [1st Dept 1999]). For coverage purposes, a unit need not be the sole residence of the occupant during the window period (see Matter of Vlachos v New York City Loft Bd., 70 NY2d 769, 770 [1987]; Kaufman v American Electrofax Corp., 102 AD2d 140, 142 [1st Dept 1984]).
To obtain summary judgment, the movant “must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact” (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Once this showing has been made, the burden shifts to the party opposing the motion “to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action” (Alvarez, 68 NY2d at 324; Zuckerman, 49 NY2d at 562).
*608 Here, notwithstanding the motion court’s inaccurate recitation of certain of the tenants’ periods of residency, the record establishes that the 2d, 3d and 5th floor units were occupied by three separate families for residential purposes for 12 consecutive months during the requisite window period of January 1, 2008 through December 31, 2009 in violation of the CO for those units (see Multiple Dwelling Law § 281 [5]; Laermer, 184 AD2d at 340).
The CO provides for commercial use of the 1st floor as a theater, offices on the 2d, 3d and 5th floors, and a caretaker’s apartment on the 4th floor. Sokolowsky swore from personal knowledge that from fall 2006 to August 2009, Kimberly Burns lived in the 3d floor unit; from spring 2007 to August 2009, Joseph Kushner and Vanessa Brown lived in the 4th floor unit; and from 2004 until September 2009, Roman Milisic and M.J. Diehl lived in the 2d floor unit. He also swore that the units “were configured and utilized for residential purposes for all of 2008 and most of 2009 until the other tenants vacated after a long court battle.”
Sokolowsky also submitted affidavits from the prior litigation in which (1) Burns stated that the 3d floor unit was configured for residential use; that she resided there from November 1, 2006 through October 31, 2008; that the 1st floor contained a commercial unit; and that floors 2 through 5 contained one residential unit each; and (2) Kushner stated that he lived in the 4th floor unit with his wife and son from May 1, 2007 through April 30, 2008. Sokolowsky also submitted the stipulation of settlement from that litigation which required Kushner and Burns to vacate their units by August 31, 2009 and Milisic by September 30, 2009.
In addition to the affidavits and stipulation, Sokolowsky submitted (1) architectural drawings prepared on behalf of plaintiff dated February 25, 2008, which showed that there were residential units on the 2d to 5th floors that contained bedrooms, living areas, full kitchens and bathrooms; and (2) records showing that the Department of Housing Preservation and Development issued 49 violations on the building, and the Environmental Conservation Board issued 20 violations, including several relating to unauthorized residential use. In 2009, violations were issued noting unauthorized residential occupancy from the 2d to 5th floors.
These submissions sustained defendants prima facie burden of establishing that in violation of the CO: (1) Sokolowsky has resided in the 5th floor from September 2007 to date; (2) Milisic resided in the 2d floor unit as of September 2004 and was au *609 thorized by the stipulation to remain there until September 30, 2009; (3) Burns resided in the 3d floor unit as of November 1, 2006 and was authorized by the stipulation to remain there until August 31, 2009; (4) Kushner resided in the 4th floor unit as of May 1, 2007 and was authorized by the stipulation to remain there until August 31, 2009; and (5) the units were configured for residential use. Thus, even if the 4th floor unit is not counted because the CO allowed its residential uses, albeit as an accessory apartment, the 2d, 3d, and 5th floors were occupied residentiary from January 1, 2008 to August 31, 2009, a period of more than 12 consecutive months.
The former tenants’ affidavits, which provided firsthand accounts of their residential use were properly considered by the motion court (see Rosado v Phipps Houses Servs., Inc., 93 AD3d 597, 597-598 [1st Dept 2012]; Conforti v Goradia, 234 AD2d 237 [1st Dept 1996]). While the stipulation settling that action contains a statement by the tenants that the building and units at issue “are not covered by [Multiple Dwelling Law] Article 7-C, [and] that [tenants] . . . are not protected, regulated or stabilized tenants of their respective units,” that legal conclusion does not alter the factual statements made in their affidavits. Indeed, the stipulation was executed prior to the effective date of Multiple Dwelling Law § 281 (5), at which time a different window for Loft Law coverage applied.
Plaintiff did not submit sufficient proof to raise an issue of fact as to whether these units were occupied for residential purposes for 12 consecutive months during the requisite window period, or as to whether the other requirements of Multiple Dwelling Law § 281 (5) were met. “Mere conclusory assertions, devoid of evidentiary facts, are insufficient for this purpose, as is reliance upon surmise, conjecture or speculation” (Smith v Johnson Prods. Co., 95 AD2d 675, 676 [1st Dept 1983]). “Facts appearing in the movant’s papers which the opposing party does not controvert, may be deemed to be admitted” (Kuehne & Nagel v Baiden, 36 NY2d 539, 544 [1975]).
Nor is there merit to plaintiffs reversion argument. In Matter of Schenkman v Dole (148 AD2d 116 [1st Dept 1989], lv denied 75 NY2d 704 [1990]), this Court held that in deciding whether a building qualifies as an IMD under the Loft Law, the sole question is whether the building was occupied residentially by three or more families during the statutory window period. A subsequent reduction in the number of occupied residential units cannot affect the remaining residential tenants’ rights to Loft Law protection (id.). Here, coverage for Sokolowsky’s 5th floor unit was established by showing that the three or more *610 units were occupied for residential purposes for 12 consecutive months during the requisite window period (id.; see also Matter of Moran, OATH Index No. 2016/00 at 40-41 [Feb. 7, 2002] [“Clearly, a unit may be covered for legalization purposes, yet be deregulated for rent purposes . . . (A) sale of fixtures under Multiple Dwelling Law § 286 (6), or a sale of rights pursuant to § 286 (12) . . . can take a unit out of rent regulation status without eliminating it as a covered unit for legalization purposes”], adopted Loft Bd. Order No. 2726 [Apr. 18, 2002]).
In any event, while plaintiff averred that the units on the 2d, 3d and 4th floors have remained empty, it did not establish that they were converted back to commercial use (see Acevedo v Piano Bldg. LLC, 70 AD3d 124 [1st Dept 2009] [because the owner maintained the residential use of the unit and claimed exemption from regulation, rather than converting it to nonresidential under 29 RCNY 2-10 (c), the unit remained subject to rent stabilization by virtue of the Emergency Tenant Protection Act of 1974]; Walsh v Salva Realty Corp., 2009 NY Slip Op 31573[U], *8 [Sup Ct, NY County 2009] [“Under the Loft Board Rules, where there is a sale of rights by a tenant in an IMD unit, and the unit remains residential, the owner remains subject to all requirements of the Loft Law and the Loft Board, ‘except that the Unit is no longer subject to rent regulation where coverage under Article 7-C (the Loft Law) was the sole basis for such rent regulation’ ”]).
The motion court’s finding as to coverage should have been restricted to the 5th floor, the sole unit at issue.
We have considered plaintiffs remaining arguments and find them unavailing. Concur — Andrias, J.P., Sweeny, Catterson, Moskowitz and Manzanet-Daniels, JJ.