■ In the Matter of BRADY PROPERTIES, LTD., Appellant, v NEW YORK CITY LOFT BOARD et al., Respondents. [702 NYS2d 63] —Judgment, Supreme Court, New York County (Leland DeGrasse, J.), entered September 25, 1998, which, insofar as appealed from, denied and dismissed appellant landlord's petition to annul an August 28, 1997 determination of the New York City Loft Board refusing to award appellant fully retroactive rent increases permitted under the Rent Guidelines Board (RGB), unanimously reversed, on the law, without costs, the petition granted, the Loft Board's determination annulled to the extent that it denied retroactive benefits from the period after 29 RCNY 2-01 (i) (1) became effective, and the matter remanded to calculate the appropriate base rents for the rent-stabilized apartments in question.

Petitioner-appellant Brady Properties, Ltd. (Brady) owns an

interim multiple dwelling subject to the Loft Law. Pursuant to this statutory scheme, a landlord may rent out apartments to residential tenants even though the building does not conform to safety code standards, as long as the landlord proceeds to bring the building up to standard (*see*, Multiple Dwelling Law §§ 280, 281, 283, 301). The individual respondents, who are not actually parties to this appeal, are Brady's tenants.

Having completed the necessary renovations, Brady received a residential certificate of occupancy on December 9, 1992. On July 15, 1993, Brady filed a post-legalization rent adjustment application with the Loft Board to determine the correct initial regulated rent, as well as any increases allowed by the Rent Guidelines Board (RGB), under the rent stabilization laws (Multiple Dwelling Law § 286 [3]).

At that time, the Loft Board's rules had no formal provision for a landlord to apply for interim Rent Guidelines Board rent increases, but the Board's equitable policy was to grant increases retroactive to the date that the landlord filed the rent adjustment application. These retroactive Rent Guidelines Board increases were incorporated into orders setting the initial regulated rent. The landlord was not expected to make an application for the retroactive increases because no such procedure was yet in place.

Subsequently, this policy was codified in an amendment to the Loft Board Rules which became effective December 3, 1993. 29 RCNY 2-01 (i) (1) explicitly provided that a landlord could apply for interim Rent Guidelines Board rent increases after issuance of the certificate of occupancy, and that said increases would be calculated retroactively to the date of filing the rent adjustment application.

Brady did not make a formal application for interim Rent Guidelines Board rent increases, having been advised that its case would be handled under the pre-amendment scheme. The Loft Board's Hearing Officer assigned to Brady's case assured Brady several times that it need not file an application for the retroactive rent increases, because the Board would automatically include them in its base rent calculation just as it had always done before 29 RCNY 2-01 (i) (1) went into effect.

However, on August 13, 1997, the very same Hearing Officer recommended to the Loft Board that Brady not receive any retroactive rent increases for the period after December 3, 1993, namely the period when Brady could have filed an application for retroactive rent increases under section 2-01 (i) (1) but did not do so. This recommendation was based on a prior decision of the Loft Board in *Application of Greenwich I Assocs.* (Loft

Board order No. 2068 [Feb. 27, 1997]), in which the Loft Board ruled for the first time that an owner who had not actively applied for retroactive rent increases under the new regulation was not entitled to them. Significantly, unlike Brady, the owner in *Greenwich* had not filed its rent adjustment application until *after* section 2-01 (i) (1) went into effect.

The Loft Board adopted the recommendation and denied interim Rent Guidelines Board rent increases to Brady for the period after the regulations were amended. Moreover, though concluding that Brady was entitled to a retroactive rent increase for the period from July 15 to December 3, 1993, the Board erroneously failed to include this increase in the calculation of the base rent.

Brady brought the instant CPLR article 78 petition seeking to overturn the Board's decision as arbitrary and capricious. The IAS Court found that although the Board's interpretation of section 2-01 (i) (1) was not the only possible one, it was a reasonable interpretation and entitled to great deference. In fact, the court believed it would have been more arbitrary for the Loft Board not to follow its own precedent in *Greenwich (supra)*. Finally, the court ruled that notwithstanding Brady's reliance on the Hearing Officer's assurances that no action was needed, a government agency like the Loft Board cannot be estopped by an employee's misstatements from implementing its official policies.

Although the Board's interpretation of section 2-01 (i) (1) is not irrational, it was arbitrary and capricious to apply it to Brady. As noted above, *Greenwich (supra)* is factually distinguishable because that landlord's case was initiated under the new rules, whereas section 2-01 (i) (1) had not even been promulgated, let alone effective, when Brady filed its post-legalization rent adjustment application. While section 2-01 (i) (1) states that a landlord *may* apply for interim Rent Guidelines Board rent increases, it does not explicitly say that he *must* apply or else forfeit a benefit that had previously been granted automatically. Even had Brady guessed that section 2-01 (i) (1) would be applied to its case, the language of the rule would not have put the landlord on notice that a new procedural hurdle was in place. On its face, it appears to be no more than a codification of existing practices. The Loft Board did not indicate that it interpreted the regulation more strictly until the *Greenwich* decision in 1997, four years after Brady filed its rent adjustment application.

A municipal agency can be equitably estopped from taking actions within its realm of discretion, as opposed to actions

that are legally mandated (*Walter v City of N. Y. Police Dept.*, 256 AD2d 8, 9). The Loft Board's departure from its prior policy of awarding retroactive rent increases without a separate application was just such a discretionary decision, as it was not required (nor even indicated) by the language of the new rule. Brady relied on the Hearing Officer's representations that the prior method of obtaining increases was still valid. Thus, the Loft Board should be equitably estopped from denying Brady's retroactive rent increases for the period following December 3, 1993, where the landlord was not only not informed of the policy change, but actively misled. We remand for recalculation of the base rent to include the increases for this period, as well as for the July-December 1993 period that was erroneously left out of the base rent calculation. Concur—Rosenberger, J. P., Nardelli, Ellerin, Saxe and Buckley, JJ.