■ In the Matter of Susan Byrne et al., Respondents, v Board of Standards and Appeals of the City of New York et al., Appellants. [774 NYS2d 493]—

Judgment, Supreme Court, New York County (Herman Cahn, J.), entered April 17, 2002, which granted the CPLR article 78 petition and annulled the resolution of respondent Board of Standards and Appeals upholding the determination of the Department of Buildings declining to seek revocation of a certificate of occupancy for the subject building, and declared the certificate of occupancy null and void, unanimously affirmed, without costs.

Petitioners Susan Byrne and William Connors, a married couple, are residential tenants of a loft apartment located on the 5th floor of 5 West 21st Street. Connors has lived in the

apartment since 1978. Respondent Daniel Pelli is the current owner of the building, having purchased it in October 1996. The building is registered with the New York City Loft Board as an interim multiple dwelling. In 1987, the building's prior owner filed an alteration application that included a narrative statement detailing the alteration work to be done in the 5th floor loft and the common areas of the building (hereinafter 1987 plans). After the plans were filed with the Loft Board and the Department of Buildings (DOB) and a conference was held with the petitioners, the Loft Board approved the work.

After purchasing the building in 1996, Pelli filed his own alteration application with DOB, which differed in some respects from the 1987 plans. The Loft Board was not notified of these new plans. In April 1998, Pelli and his architect filed papers certifying that the building was in compliance with the fire and safety requirements of article 7-B of the Multiple Dwelling Law, and in November 1998, a DOB inspector determined, purportedly after an inspection, that all the required work at the building was completed. On March 17, 2000, DOB issued a certificate of occupancy (C/O) for the building.

Meanwhile, in January 1999, petitioners filed a complaint with the Loft Board, arguing that none of the work listed in the 1987 narrative statement had been done in their loft or in the public areas of the building. This Loft Board proceeding was discontinued by stipulation in April 1999, which provided for dismissal of petitioners' claims alleging noncompliance with the 1987 plans, except that petitioners reserved the right to allege noncompliance with "those provisions of the narrative statement that pertain to legalization—work to be done to legalize the building."

In May 2000, Pelli applied to the Loft Board for permission to increase petitioners' rent, relying on the issuance of a valid C/O. Petitioners opposed the application for a rent increase and applied to DOB for revocation of the C/O, citing Pelli's failure to complete the work required by the 1987 plans. In August 2000, an Administrative Law Judge dismissed petitioners' objections, finding that the Loft Board was not the proper forum to contest a C/O, which, upon issuance by DOB, entitles the owner to a rent guidelines board increase under the Loft Board Regulations (29 RCNY 2-01 [i]).

With respect to petitioners' application to DOB to revoke the C/O, the record reveals that two letters were sent by DOB's Borough Commissioner to Pelli, on September 13 and September 29, 2000, specifically advising Pelli that certain work required by the 1987 plans must be completed in order to legalize the

building. Such work included the installation of a kitchen sink in petitioners' loft, a sprinkler system in certain common areas, hardwire smoke detectors, roof railing as per the 1987 plans, skylight protection and noncombustible screens as per the 1987 plans and resilient materials in petitioners' bathroom floor and walls.

On November 14, 2000, the Borough Commissioner made its final determination that it would not commence proceedings to revoke the C/O because the owner "has started to complete the work" mentioned in his September letters, and the "remaining open items are of a maintenance nature." In December 2000, petitioners filed an appeal with respondent Board of Standards and Appeals (BSA).

In the meantime, the parties engaged in further proceedings before the Loft Board in November 2000. Petitioners filed an unreasonable interference application and Pelli responded with an application seeking access to petitioners' loft, claiming that the petitioners were preventing him from making the alterations required by the Borough Commissioner's September 2000 letters. In a February 2001 report and recommendation, an Administrative Law Judge (ALJ) recommended dismissal of Pelli's access application, finding that although the tenants denied Pelli access on one occasion, the application should be denied as matter of law since Pelli was refusing to do the work in the manner required by the 1987 plans. The ALJ further recommended holding Pelli liable for unreasonable interference due to his flagrant and willful disregard of the narrative statement process. The ALJ suggested fines for each of the items not completed and made a finding of harassment pursuant to 29 RCNY 2-01 (h). In April 2001, the Loft Board approved each of the ALJ's recommendations.[1]

In February 2001, the Environmental Control Board issued 10 violations against the building, many of which related to the work items required by the 1987 plans.

In March 2001 and June 2001, the BSA conducted proceedings on petitioners' appeal from DOB's refusal to revoke the C/O. Written submissions were made and the BSA panel heard argument from both parties and DOB counsel. Petitioners' counsel argued that many of the work items from the 1987 plans had not been done, and also pointed out that the Loft Board's April 2001 order demonstrated that Pelli had no inten-

---

1. The owner has appealed the Loft Board's order in a CPLR article 78 proceeding, but this Court has rejected the owner's appeal and affirmed the Loft Board order (see *Matter of Pelli v New York City Loft Bd.*, 5 AD3d 268 [2004]).

tion of complying with those plans. Pelli initially admitted to the BSA that he intended to do the bare minimum work required by the Building Code, irrespective of the 1987 plans. However, upon prodding from the panel members, he promised he would complete the work required by the 1987 plans. DOB counsel argued that most of the outstanding work involved "routine" matters that could be corrected, and that DOB was entitled to exercise its discretion in declining to seek revocation of the C/O, and instead issuing violations against the owner. In July 2001, the BSA issued a resolution denying petitioners' appeal.

In August 2001, petitioners filed the instant CPLR article 78 proceeding seeking to annul the BSA's resolution which declined to revoke the C/O. In the judgment appealed from, Supreme Court held that "there is no question that the Building failed to comply with numerous safety and fire standards required by the Multiple Dwelling Law," and therefore DOB "was without authority to issue a certificate of occupancy, and the c of o that was issued is void." The court ruled that the fact that the violations were curable should not prevent revocation since, unlike the situation where a code-compliant building subsequently incurs violations, this building "was never code compliant." Accordingly, the court annulled the BSA resolution and declared the C/O null and void.[2]

On appeal, the BSA and Pelli argue that the BSA's discretionary determination not to revoke the C/O was rational and entitled to judicial deference since the owner had substantially completed the outstanding work and the remaining items were routine in nature. Thus, they contend, the article 78 court erred in substituting its own judgment for that of the agency charged with reviewing the propriety of the issuance of a C/O. We disagree.

Pursuant to New York City Charter § 645 (b) (3), the Commissioner of DOB is authorized to issue certificates of occupancy for any building or structure in the city, "subject to review only by the board of standards and appeals." The City Charter further requires that a certificate of occupancy issued by DOB "shall certify that such building or structure conforms to the requirements of all laws, rules, regulations and orders applicable to it" (New York City Charter § 645 [b] [3] [d]; see also Multiple Dwelling Law § 301 [1] ["No multiple dwelling shall be

---

2. Contrary to respondents' argument, the motion court's decision in this matter did not rest on the nonrecord fact that the DOB inspector who conducted the November 1998 inspection of the building was later convicted of receiving unlawful gratuities in connection with an unrelated inspection.

occupied . . . until the issuance of a certificate by the department that said dwelling conforms in all respects to the requirements of this chapter, to the building code and rules and to all other applicable law . . ."]).

Notwithstanding the above statutory mandates requiring full compliance before a C/O may be issued, the BSA and Pelli argue that Administrative Code of the City of New York § 27-215 applies here and imposes a less stringent standard than total compliance with all applicable laws, codes and rules. Section 27-215, which applies to the issuance of C/O's with respect to altered buildings, states in pertinent part: "[N]o building hereafter altered . . . shall be occupied or used unless and until a certificate of occupancy shall have been issued *certifying that the alteration work for which the permit was issued has been completed substantially in accordance with the approved plans and the provisions of this code and other applicable laws and regulations*" (emphasis added).

The BSA and Pelli argue that BSA's determination that Pelli "has taken substantial steps to correct the problems" meets the "substantial completion" standard in Administrative Code § 27-215, and should be afforded judicial deference. Of course, in regard to questions falling within its ambit of expertise, the BSA's interpretation of the applicable statutes and regulations "must be 'given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute' " (*Matter of Toys "R" Us v Silva*, 89 NY2d 411, 418-419 [1996], quoting *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 62 NY2d 539, 545 [1984]). Moreover, the determination of an administrative agency such as the BSA "must be sustained if it has a rational basis and is supported by substantial evidence" (*Matter of Toys "R" Us v Silva*, 89 NY2d at 419).

We conclude, however, that even under this deferential standard, the BSA's determination does not withstand scrutiny. First, it is undisputed that at the time the C/O was issued in March 2000, none of the critical fire, safety and habitability work required by the 1987 plans, the Multiple Dwelling Law and the Building Code had been done. The owner, DOB and the BSA have acknowledged this, either explicitly or implicitly. Thus, while the BSA and Pelli ask us to defer to their conclusion that Pelli has met the "substantial completion" standard of Administrative Code § 27-215, there is no serious dispute concerning Pelli's total lack of compliance with the 1987 plans and applicable laws at the time the C/O was issued. Obviously, no judicial deference is owed to an agency's statutory interpretation that is premised on an erroneous factual conclusion.

Perhaps in recognition that Pelli clearly had not met the "substantial completion" standard of section 27-215 when the C/O was issued, the BSA and Pelli suggest that "substantial completion" may properly be judged at a later stage in the proceedings, such as during the appeal to the BSA, which in this case occurred approximately one year after the C/O was issued. It is clear, however, from the language employed in section 27-215 that substantial completion is to be judged at the time of issuance ("no building . . . shall be occupied or used unless and until a certificate of occupancy shall have been issued certifying that the alteration work . . . has been completed substantially in accordance with the approved plans"). It stands to reason, therefore, that if the C/O must certify that "substantial completion" has occurred, such completion must occur before the C/O is issued.

Nevertheless, even if we accepted respondents' interpretation of this provision, the record of the BSA proceedings makes it perfectly clear that even up to the time the BSA hearing was being held, none of the required work for petitioners' apartment had been completed, although some of the work in the common areas had been. The complete failure to do any of the work in petitioners' loft cannot be deemed substantial completion.

Second, it is also significant that Pelli and his architect filed a statement with DOB in April 1998 certifying that all the work that was necessary to bring the building into compliance with article 7-B of the Multiple Dwelling Law and the 1987 plans had been completed, and a DOB inspector made a similar conclusion, after an alleged November 1998 inspection. In light of the undisputed fact that *none* of the required work was actually completed prior to the issuance of the C/O, serious questions are raised as to the veracity of these certifications and inspection. At a minimum, we must conclude that Pelli obtained the C/O at issue based on false information, and it is more than a little surprising that the BSA had little to say about this defect in the C/O issuing process in considering petitioners' request for revocation.

Third, we find that the BSA's factual determination in its resolution that "the record indicates that the owner has taken substantial steps to correct the problems that are the subject of this appeal" is substantially undermined by the ALJ's contrary findings in his detailed February 2001 report. In fact, petitioners' counsel specifically advised the BSA panel that in recent proceedings before the Loft Board, the ALJ had dismissed Pelli's access application and granted petitioners' unreasonable

interference application on the ground that Pelli had exhibited flagrant disregard for the narrative statement process by refusing to do the work required in the 1987 plans. These rulings, upheld by the Loft Board and affirmed by this Court today (*see Matter of Pelli v New York City Loft Bd.*, 5 AD3d 268 [2004]), are entirely consistent with Pelli's initial comments at the BSA hearing that he did not have to comply with the 1987 plans, and that he would only do the minimum work required by the Building Code. In addition, although Pelli alleged that petitioners denied him access to their loft, the record shows that access was denied by petitioners on a single occasion when Pelli attempted to install a commercial "slop sink," instead of a normal sink for a residence. Thus, the BSA's conclusion that Pelli has taken substantial steps to complete the work required to satisfy the 1987 plans and applicable laws is belied by the record of the BSA hearing.

The BSA's and Pelli's reliance on the BSA's "policy" of not seeking revocation of a C/O where the defects are curable and the owner has taken substantial steps to cure them is misplaced. Assuming these criteria are met, we do not dispute that the BSA in the exercise of its discretion might properly decline to seek revocation of an improperly issued C/O in circumstances where the violations were relatively minor and the owner has shown a willingness to correct the problems.[3]

However, such circumstances are not present in this case where the owner has falsely certified that the code-compliance work has been completed, has failed to do the required work for a substantial period of time despite notice from DOB, and has continued, even at the BSA stage, to deny that he must comply with the narrative statement process outlined in the Loft Law. As the motion court recognized, to sanction such a policy would provide an incentive for unscrupulous owners "to file whatever papers are necessary to obtain a certificate of occupancy, regardless of their accuracy, secure in the knowledge that so long as the renovations required are possible to do, the owner will be able to retain the certificate of occupancy, and all its attendant benefits, even if he has never performed the renovations promised."

Accordingly, we agree with the motion court that the BSA's determination in this case declining to revoke the C/O was arbitrary and capricious and must be annulled (*see Matter of Ansonia Assoc. Ltd. Partnership v New York State Div. of Hous.*

---

**3.** To this extent, we disagree with the motion court's suggestion that the BSA must revoke a C/O for any violation of the approved plans or applicable laws, no matter how inconsequential.

& *Community Renewal*, 307 AD2d 832, 834 [2003] [DHCR determination finding rent overcharge annulled as arbitrary and capricious where tenant's evidence did not prove that prior tenant was evicted]; *Matter of Brady Props. v New York City Loft Bd.*, 269 AD2d 137, 139-140 [2000] [Loft Board determination denying rental increase to landlord was arbitrary and capricious where application filed before new rule was effective and landlord was misled as to impact of new policy]).

We have examined respondents' remaining contentions and find them to be without merit. Concur—Nardelli, J.P., Mazzarelli, Andrias, Marlow and Gonzalez, JJ.