Matter of Callen v New York City Loft Bd. (2020 NY Slip Op 00368)





Matter of Callen v New York City Loft Bd.


2020 NY Slip Op 00368


Decided on January 16, 2020


Appellate Division, First Department


Renwick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 16, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando Acosta,P.J.
Dianne T. Renwick
Sallie Manzanet-Daniels
Anil C. Singh, JJ.


156504/17 100873/17 10322 

[*1]In re Robinson Callen, etc., Petitioner-Respondent,
v
New York City Loft Board, Respondent-Appellant, Richard Fiscina, et al., Respondents-Respondents.
In re Richard Fiscina, Petitioner-Respondent,
v
New York City Loft Board, Respondent-Appellant, Robinson Callen, etc., et al., Respondents-Respondents.



Respondent New York City Loft Board appeals from judgments of the Supreme Court, New York County (Arlene P. Bluth, J.), entered April 10, 2018, granting the petitions and annulling its determination, dated March 16, 2017, which rejected applications for reconsideration of a prior determination rejecting a proposed settlement agreement between petitioner building owner and residential tenants, and remanded the matter for administrative resolution of the tenants' application for Loft Law coverage.



Zachary W. Carter, Corporation Counsel, New York (Diana Lawless and Scott Shorr of counsel), for appellant.
Belkin Burden Wenig & Goldman, LLP, New York (Magda L. Cruz, Joseph Burden and Sherwin Belkin of counsel), for Robinson Callen, respondent.
David E. Frazer, New York, for Richard Fiscina, respondent.
Goodfarb & Sandercock, LLP, New York (Margaret B. Sandercock and Elizabeth Sandercock of counsel), for Luke Weinstock, Zenia De La Cruz and Maria Theresa Totengco, respondents.



RENWICK, J.


This article 78 proceeding stems from an application for the legal conversion of certain lofts in New York City from commercial use to residential use pursuant to Article 7-C of the Multiple Dwelling Law (§ 283), commonly known as the Loft Law. Where owners register covered buildings and comply with the Loft Law's requirements, the Loft Law will deem a building an "interim multiple dwelling (IMD)" (Multiple Dwelling Law § 284[1]), which would allow the owner to collect rent from residential occupants, despite the lack of a residential certificate of occupancy (Multiple Dwelling Law §§ 283, 285, 301). The Loft Law requires landlords to bring converted residences up to code and prevents them from charging tenants for improvements until the issuance of a certificate of occupancy (Multiple Dwelling Law § 284(1)). The Loft Law is administered by the New York City Loft Board (Multiple Dwelling Law § 282).
In March 2014, four residents of the building located at 430 Lafayette Street Rear submitted Loft Law coverage applications seeking to compel the owner, Robert Callen, to legalize the building in compliance with the Loft Law and to have the Board deem the building an IMD. Callen also owns an adjoining building (front building), which is rent-stabilized. Callen answered, opposing the application primarily on the ground that the four residents of the subject building were not covered by the Loft Law as their units were not residentially occupied during the window period of the Loft Law (12 consecutive months during 2008 and 2009).[FN1]
On January 21, 2015, the parties entered into a settlement agreement, which they submitted to the Loft Board, providing that the tenants would withdraw the coverage application with prejudice, and Callen would recognize the tenants as covered by the Rent Stabilization Law. Callen would register the units with DHCR as rent-stabilized and would not increase the rents until a certificate of occupancy was obtained. Callen also agreed to use reasonably diligent efforts to obtain a new certificate of occupancy for residential use.
The Administrative Law Judge issued a decision recommending that the Board accept the tenants' withdrawal of the coverage application with prejudice, without making a recommendation as to the agreement. On March 16, 2015, the Board issued an order rejecting the agreement, including the tenants' request to withdraw the coverage application with prejudice, as against public policy, and remanding the application for further adjudication on the coverage application. The Board explained that given the absence of a residential certificate of [*2]occupancy, it is illegal for the tenants to reside in the building, unless they obtain protection under Multiple Dwelling Law § 283, which permits residential use in an IMD prior to the issuance of a residential certificate of occupancy, and the Board found that the tenants did not have such protection because they agreed to withdraw their coverage claims.
Callen and the residents then filed applications for reconsideration of the Board's order, arguing that the Board erred as a matter of law in remanding the application because Callen had already registered the units with DHCR, the building could be considered a "single horizontal multiple dwelling" with the already rent-stabilized front building, and the building "cannot be covered by two separate regulatory regimes." They further argued that the Board lacked authority to compel the parties to litigate or deny the tenants the right to withdraw their coverage application, especially where the Board might ultimately conclude that either the units or the tenants were not entitled to Loft Law coverage.
On March 16, 2017, the Board denied the reconsideration applications. In June and July 2017, Callen and one of the residents filed separate article 78 petitions, alleging that the Board's orders were arbitrary and capricious in that the Board compelled the parties to litigate the coverage applications and prevented the building from being covered by the Rent Stabilization Law. The Board answered, arguing that its orders were not arbitrary or capricious.
Supreme Court granted the petitions on the ground that the order for reconsideration and the underlying Board order were without rational basis. Specifically, the court found that although the building owner and tenants have settled their differences, the Board "has refused to accept the Settlement," leaving the tenants to either default at the forced hearing or to "spend plenty of money and time litigating something they do not wish to litigate. Both those options are wasteful and make no sense." The court did not find irrational the Board's position of not approving a settlement that it considered inappropriate. Nevertheless, the court concluded that even if the Board did not agree with this settlement, it was irrational to refuse to allow the applicant to withdraw the application and to force litigation. This appeal ensued.
Initially, we agree with Supreme Court that it was irrational to refuse to allow the tenants to withdraw their conversion application because the Loft Law was not the sole basis for legalization of the subject units. The broad remedial purpose of the Loft Law is to confer rent-stabilized status on qualifying buildings by legalizing them as interim multiple dwellings (see Multiple Dwelling Law §§ 283, 285, 301; see also Blackgold Realty Corp. v Milne, 119 AD2d 512, 515 [1st Dept 1986], affd 69 NY2d 719 [1987]). This conversion process, however, does not necessarily negate rent stabilization coverage for qualifying buildings that, for whatever reason, do not undergo the conversion process set forth in the Loft Law. On the contrary, as this Court held in Acevedo v Piano Bldg. LLC (70 AD3d 124, 129 [1st Dept 2009], appeal withdrawn 14 NY3d 834 [2010]), there is no blanket prohibition barring rent-stabilization of units that are not subject to the Loft Law. "Where zoning expressly allows residential use as of right and apartments can be legalized by the owner filing a certificate of occupancy, there is no rationale ... to foreclose [rent-stabilization]" (Acevedo, at 130-131). Thus, the Rent Stabilization Law is "inclusive, rather than exclusive" and, as such, incorporates within rent stabilization "all housing accommodations which it does not expressly [exempt]" (Matter of Salvati v Eimicke, 72 NY2d 784, 791 [1988]).
Here, the petitioner tenant claims, and the Loft Board does not dispute, that there is a separate and independent track for the tenants to obtain rent regulation coverage outside the Loft Law's statutory scheme. It is undisputed that the four residential occupancies are legal under New York City Zoning applicable to the area where the subject building is located. While the Rent Stabilization Law usually requires buildings to have six or more residential units, adjacent buildings with common facilities, ownership, and management are treated as one integrated unit, thereby constituting a horizontal multiple dwelling for purposes of rent stabilization (see e.g. [*3]Matter of Ruskin v Miller, 172 AD2d 164 [1st Dept 1991]; Nine Hunts Lane Realty Corp. v New York State Div. of Housing & Community Renewal, 151 AD2d 465 [2d Dept 1989]); Matter of Krakower v State of N.Y., Div. of Hous. & Community. Renewal, Office of Rent Admin., 137 AD2d 688 [2nd Dept 1988], lv denied, 74 NY2d 613 [1989]. In this case, the subject building is a rear building that adjoins a front building that is already subject to rent stabilization. Given that the buildings share common ownership — a sprinkler system, a plumbing system, and their respective electric meters and mailboxes are at the same location  the rear building appears to be part of a horizontal multiple dwelling that would be subject to rent stabilization once the residential certificate of occupancy is procured by the owner.
The Loft Board expresses unfounded concerns that, since the tenants are living concomitantly without a certificate of occupancy and devoid of Interim Multiple Dwelling protection under the Loft Law, the tenants are in danger of eviction. This Court, however, has consistently held that a landlord cannot evict a putative rent-stabilized tenant under the Multiple Dwelling Law on the basis that there is no certificate of occupancy, if the housing accomodation can be legalized (see Acevedo v Piano Bldg, LLC, 70 AD3d 124; Duane Thomas LLC v Wallin, 35 AD3d 232 [1st Dept 2006]; Sima Realty v Philips, 282 AD2d 394 [1st Dept 2001]; Hornfeld v Gaare, 130 AD2d 398 [1st Dept 1987]). The Multiple Dwelling Law "was enacted to protect tenants of multiple dwellings against unsafe living conditions, not to provide a vehicle for landlords to evict tenants on the ground that the premises are unsafe" (Sima Realty, 282 AD2d at 395). Instead of mandating the eviction of tenants, this Court's "tendency would be to compel the landlord's expeditious conversion of the premises to residential use" (id.).
While we find that there is no valid reason for the Loft Board's refusal to grant the tenants' request to withdraw the conversion application, we do not agree with the tenants that the Loft Board's rejection of the proposed settlement, as a vehicle for conversion to rent stabilization, has no rational basis (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; see also Matter of Brady Props. v New York City Loft Bd., 269 AD2d 137, 139 [1st Dept 2000]). The Loft Law and several related laws set procedures to protect and preserve residential occupancies in buildings that were originally built for commercial use by ensuring renovations to these buildings to bring them up to the safety standards that are normal in apartment buildings. The Loft Board is the agency charged with the responsibility to oversee the legalization process of such buildings. However, once the tenants decided to withdraw their conversion application (which, as explained above, we find the Loft Board should have permitted them to do), the Board no longer had authority to supervise and approve the legalization process of the building because the tenants relinquished their rights to proceed to conversion pursuant to the Loft Law.
Accordingly, the judgments of the Supreme Court, New York County (Arlene P. Bluth, J.), entered April 10, 2018, annulling respondent New York City Loft Board's determination, dated March 16, 2017, which rejected applications for reconsideration of a prior determination rejecting a proposed settlement agreement between petitioner building owner and residential tenants and remanded the matter for administrative resolution of the tenants' application for Loft Law coverage, should be modified, on the law, the petitions denied to the extent they sought to vacate the part of the March 16, 2017 determination rejecting a proposed settlement agreement between petitioner building owner and residential tenants, and otherwise affirmed, without costs, to the extent the petitions sought to vacate the part of the March 16, 2017 determination rejecting the residential tenants' request to withdraw their Loft Law coverage applications, and the
matters remitted to respondent New York City Loft Board for further proceedings consistent herewith.
All concur.
Judgment, Supreme Court, New York County (Arlene P. Bluth, J.), entered April 10, [*4]2018, modified, on the law, the petitions denied to the extent they sought to vacate the part of the March 16, 2017 determination rejecting a proposed settlement agreement between petitioner building owner and residential tenants, and otherwise affirmed, without costs, to the extent the petitions sought to vacate the part of the March 16, 2017 determination rejecting the residential tenants' request to withdraw their Loft Law coverage applications, and the matters remitted to respondent New York City Loft Board for further proceedings consistent herewith.
Opinion by Renwick, J. All concur.
Acosta, P.J., Renwick, Manzanet-Daniels, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 16, 2020
CLERK



Footnotes

Footnote 1: The 2009 Loft Law Amendment created a new window period for recognition of loft tenants that previously did not qualify under the original 1982 Loft Law. The purpose of this bill is to extend provisions of the Loft Law to buildings that have been occupied residentially for 12 consecutive months during the period starting January 1, 2008 and ending December 31, 2009.