*241 OPINION OF THE COURT
Lizbeth González, J.
Background
The petitioner in the underlying holdover proceeding seeks to evict the self-represented respondent from apartment A at 2059 Colonial Avenue in Bronx County, on the ground that the occupancy is illegal and subjects the petitioner to civil and criminal penalties.
This matter was first heard in Part G on December 1, 2000 and adjourned to December 14, 2000 for a Russian interpreter and to allow the respondent an opportunity to consult with an attorney. On the return date, the respondent appeared without counsel. During the course of a court conference, the petitioner conceded that she illegally rented the basement apartment for more than 20 years. Hearing this, the Court questioned whether the Housing Court has jurisdiction to award to petitioner a final judgment of possession or whether the holdover proceeding should be dismissed on the ground that the petitioner’s remedy is an ejectment action more properly brought in Civil Court or Supreme Court. The Court requested a memorandum of law addressing the import of the illegal occupancy in this- regard. In the memorandum subsequently submitted to the Court, the petitioner stipulated to the following facts:
(a) The petitioner purchased the premises in 1977. Apartment A was rented at the time of purchase. When that tenant moved, the apartment was rented to the respondent.
(b) The premises has six legal apartments. Apartment A, the cellar apartment, is not one of the six legal apartments. According to the certificate of occupancy, the cellar may only be used as a boiler room, storage, carriage room, laundry or doctor’s office.
(c) The building is subject to rent stabilization. The cellar apartment was registered through 1998 with the New York State Division of Housing and Community Renewal as a rent-stabilized apartment.
(d) The New York City Department of Buildings inspected the subject premises and issued a summons to the petitioner for violating the certificate of occupancy. The petitioner was directed to legalize the subject premises or restore it to its legal use.
(e) The petitioner spoke to an architect and learned that it was “not feasible” to legalize the premises.
*242 (f) The petitioner thereafter served the respondent with a 10-day notice to quit. Because the respondent did not vacate the premises after receiving the notice, the petitioner instituted the underlying holdover proceeding to discontinue the unlawful tenancy.
The self-represented respondent submitted no opposition papers.
Discussion
Holdover proceedings are unlike nonpayment proceedings in that the certificate of occupancy requisites of the Multiple Dwelling Law do not have to be met. (Lee v Gasoi, 113 Misc 2d 760, affd 126 Misc 2d 719 [App Term, 1st Dept], affd 119 AD2d 1016 [1st Dept 1986]; Multiple Dwelling Law § 302 [b].) Holdover proceedings are similar to nonpayment proceedings in that RPAPL 741 equally requires holdover and nonpayment petitions to accurately describe the premises from which removal is sought. The holdover petition in issue incorporates by reference at paragraph six therein the underlying notice of termination; Read in toto, the petition describes the subject premises as an illegal apartment subject to both the Multiple Dwelling Law and the Rent Stabilization Code (9 NYCRR parts 2520-2530). Significantly, the petition meets the strictures of RPAPL 741 (3) by describing the premises as an illegal unit.
The Multiple Dwelling Law defines a multiple dwelling as “the residence or home of three or more families living independently of each other.” (Multiple Dwelling Law § 4 [7].) The Multiple Dwelling Law was enacted by the New York State Legislature which determined in its legislative finding that:
“[the] intensive occupation of multiple dwelling sites, overcrowding of multiple dwelling rooms, inadequate provision for light and air, and insufficient protection against the defective provision for escape from fire, and improper sanitation of multiple dwellings in certain areas of the state are a menace to the health, safety, morals, welfare, and reasonable comfort of the citizens of the state.” (Multiple Dwelling Law § 2.)
Basements are often unsuitable for human habitation. Stringent standards must be met to ensure minimal compliance with height, light, ventilation and fire safety standards before a certificate of occupancy can issue. (See Multiple Dwelling Law § 34.) For this reason, the Multiple Dwelling Law and the Administrative Code of the City of New York provide that *243 no room in a cellar or basement shall be occupied for living purposes absent a written permit for residential occupancy. (Multiple Dwelling Law § 301; Administrative Code § 27-217.)
Section 302 (1) (b) of the Multiple Dwelling Law provides, in pertinent part, that where a dwelling is occupied in violation of section 301, “no rent shall be recovered by the owner of such premises * * * and no action or special proceeding shall be maintained * * * for possession of said premises for nonpayment of rent.” In Lee v Gasoi, a loft respondent sought the dismissal of a holdover proceeding on the ground that the proceeding was barred by the Multiple Dwelling Law given that the occupancy was illegal and the commercial certificate of occupancy for the residential unit was de facto inaccurate. The court there held that Multiple Dwelling Law § 302 (1) (b) was an improper ground for dismissal since that provision references nonpayment proceedings. Dismissing the proceeding on other grounds, the court directed the owner to offer the loft tenant a renewal lease and obtain a certificate of occupancy for the illegal loft apartment. (Lee v Gasoi, 113 Misc 2d 760, supra.)
Here, the subject premises is a registered multiple dwelling and not an interim multiple dwelling. Significantly, the building is also rent stabilized. It is impossible at this stage in the proceeding to determine whether the certificate of occupancy can be amended or whether the petitioner will be obliged to cure the illegal condition and directed to offer a renewal lease to the rent-stabilized tenant. (Hornfeld v Gaare, 130 AD2d 398 [1st Dept 1987].)
Section 2524.3 (c) of the Rent Stabilization Code provides, in pertinent part, that an action or proceeding to recover possession may be commenced without the approval of the New York State Division of Housing and Community Renewal where the “Mccupancy of the housing accommodation by the tenant is illegal * * * and the owner is subject to civil or criminal penalties therefor,” provided that the tenant is first served with notice pursuant to section 2524.2 therein. The petitioner falls squarely into this category. On March 17, 2000 the New York City Department of Buildings issued a summons to the petitioner pursuant to section 27-217 of the Administrative Code alleging that the occupancy at the subject premises was contrary to law. The alleged transgression was deemed “hazardous.” The notice of termination dated October 19, 2000 states that the respondent’s tenancy is being terminated on the ground that:
‘Your occupancy of the subject premises is illegal *244 because the Certificate of Occupancy is for a Doctor’s Office. A Department of Buildings violation has been placed against the owner for ‘occupancy contrary to that allowed by the C of O’ under violation No. 342-150-29N. This violation has been deemed hazardous by the Department of Buildings and the landlord is subject to civil penalties and fines in the sum of Two Thousand Five Hundred Dollars (2,500.00).”
At an administrative hearing held on January 14, 2001 to adjudicate the summons issued by the Department of Buildings, the New York City Environmental Control Board (ECB) determined that the petitioner had violated section 27-217 of the Administrative Code and imposed an $800 fine for the illegal tenancy. (City of New York v Del Gigante, ECB violation No. 342-150-29N [Jan. 4, 2001].) The petitioner correctly states that she is subject to additional penalties if the premises is not restored to its lawful use. A second violation may result in a $5,000 fine. (Administrative Code § 26-126.1.)
The jurisdiction to evict tenants from illegal apartments is divided along monetary lines between the Supreme Court of the State of New York and the Civil Court of the City of New York, where ejectment actions can be commenced, and shared with the Housing Court where holdover proceedings can be initiated without monetary requirements or limitations. (NY Const, art VI, § 7; CCA 110 [a]; 203 |j]; RPAPL art 6; §§ 711, 713; see Hudsoncliff Bldg. Co. v Chandler, 279 AD2d 423 [1st Dept].)
Regardless of the relief originally sought by a party, the Housing Court is empowered to recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards if the court believes they will be more effective to accomplish compliance or to protect and promote the public interest. (CCA 110 [c].) Arguably, a petitioner who has acted with unclean hands in collecting rent from an illegal basement apartment could be relegated to bringing a more costly and time-consuming ejectment action in either the Supreme Court or Civil Court rather than benefit-ting from the speedier and more cost-effective summary proceeding adjudicated in the Housing Court. In weighing the equities it is clear that public policy compels this Court to place first and foremost the well-being of the tenant, the public and any firefighters or other emergency personnel that might be called to the premises if calamity struck. (Sorenson v Ramon, *245 NYLJ, May 17, 2000, at 34, col 1 [Civ Ct, Richmond County].) Whether legalization of the subject premises is a remedy available to the tenant is a question that can be determined in due course.
Conclusion
The Housing Court shares concurrent jurisdiction with the Civil Court and the Supreme Court to evict respondents from illegally occupied residential units. This challenging array of venues is the raison d’etre for Chief Judge Kaye’s proposal to simplify the State courts through merger into a more cohesive structure.
“In New York State, there are 11 separate trial courts. Whatever its original virtues, this multitude of forums, each with its own particular subject matter and geographical jurisdiction, and its often unique and complicated procedural rules, is in need of serious repair. It is confusing to the public and a trap for unwary members of the bar and their clients who fail to negotiate its many byways. It also is a source of higher litigation costs because it often requires parties * * * to venture back and forth between courts so as to secure complete relief that is beyond the power of any one of them to provide.” (Judiciary Legislative Agenda, NYS Unified Court System, Court Restructuring, at 1 [Dec. 2000].)
In this specific instance, the Court declines to dismiss the underlying holdover proceeding, notwithstanding the petitioner’s unclean hands and the availability of an ejectment action in either the Civil Court or Supreme Court, given that (1) a Department of Buildings summons alleged that the subject premises is illegally occupied contrary to the certificate of occupancy; (2) the Environmental Control Board adjudicated the summons and determined that the occupancy was illegal; (3) the continuing violation is deemed hazardous; (4) the underlying notice to quit is premised on the illegal tenancy; (5) the petition accurately describes the subject premises as an illegal residential unit; and (6) the petitioner is subject to additional civil penalties unless the premises is restored to its lawful use.