OPINION OF THE COURT
 

 Graffeo, J.
 

 In 1982, the Legislature enacted the Loft Law to address the proliferation of illegal residential conversions of manufacturing premises in New York City. Plaintiff tenants, who converted their commercially-leased units over a decade after the Loft Law’s eligibility period ended, ask this Court to extend the protections of the Emergency Tenant Protection Act of 1974 (ETPA [L 1974, ch 576, § 4, as amended]) to their conversions. We conclude, as did the courts below, that ETPA protections are not available under these circumstances.
 

 Defendant landlord Kee Yip Realty Corp. owns a seven-story commercial building located at 135 Grand Street in Manhattan. The building is situated in a M1-5B zoning district, which permits use of the property for light manufacturing and joint living-work space for artists. New residential development is excluded in this district, except for joint living-work quarters for artists, to ensure adequate area for industrial growth
 
 (see
 
 New York City Zoning Resolution § 41-11).
 

 Over an 11-month period beginning in July 1997, landlord entered into commercial leases with tenants individually for the rental of raw loft space on the second through seventh floors of the building. The leases provided for monthly rental payments of approximately $1,700. Tenants renovated their rental units at their own expense, converting the loft space for personal residential use. There is no residential certificate of occupancy for the building, and landlord has apparently made no attempt to obtain a variance or other relief from the zoning restriction. Tenants do not dispute that they occupy the units illegally, in violation of the City Zoning Resolution, as they are not artists.
 
 [1]
 

 As the expiration of their commercial leases approached, tenants commenced this action seeking injunctive relief and a declaration that, notwithstanding their illegal use of the space, they are protected by the Rent Stabilization Law and Rent Stabilization Code through the ETPA. Landlord answered and moved for summary judgment solely on the basis that the build
 
 *491
 
 ing could not legally be converted to residential use and that tenants therefore were not entitled to any relief.
 
 [2]
 

 Supreme Court granted landlord’s motion and dismissed the complaint. Noting the inapplicability of the Loft Law
 
 (see
 
 Multiple Dwelling Law art 7-C) to the facts of this case, the court held that the ETPA did not provide a mechanism for converting commercially-zoned property to residential use and thus tenants could not legalize their conversions.
 

 On tenants’ appeal, the Appellate Division modified, only to the extent of declaring that the tenancies are not covered by the ETPA, and otherwise affirmed. The Court rejected tenants’ request for ETPA protection, holding that the Act “does not extend to tenancies that are illegal and incapable of becoming legal” (302 AD2d 327, 328 [1st Dept 2003]). This Court granted tenants leave to appeal and we now affirm.
 

 This appeal involves the interplay of two statutory schemes— the ETPA and the Loft Law—both enacted to address a “serious public emergency” in housing (McKinney’s Uncons Laws of NY § 8622 [ETPA § 2]; Multiple Dwelling Law § 280 [Loft Law]). The ETPA, adopted in 1974, was necessary “to prevent exaction of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health, safety and general welfare” (McKinney’s Uncons Laws of NY § 8622 [ETPA § 2]). To that end, where a locality has declared a housing emergency, the Act applies to regulate residential rents “of all housing accommodations which it does not expressly except, including previously unregulated accommodations”
 
 (Matter of Salvati v Eimicke,
 
 72 NY2d 784, 791 [1988];
 
 see Matter of Gracecor Realty Co. v Hargrove,
 
 90 NY2d 350, 355 [1997]; McKinney’s Uncons Laws of NY §§ 8623, 8625 [ETPA §§ 3, 5]).
 

 The Legislature passed the Loft Law—Multiple Dwelling Law article 7-C (L 1982, ch 349, § 1)—in 1982 in response to the “emergency . . . created by the increasing number of conversions of commercial and manufacturing loft buildings to residential use without compliance with applicable building codes and laws and without compliance with local laws regarding min
 
 *492
 
 imum housing maintenance standards” and in recognition of the fact “that illegal and unregulated residential conversions undermine the integrity of the local zoning resolution and threaten loss of jobs and industry” (Multiple Dwelling Law § 280;
 
 see Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.,
 
 66 NY2d 298, 302 [1985]). As the final component of a six-part plan for utilization of loft space in New York City, the Loft Law is designed
 

 “to finally balance the equities of the conflicting interests in the development and use of loft space. The bill when enacted will take a ‘snap shot’ of those people eligible for protection under this article. . . . This bill recognizes the important impact that those in the creative arts have on the cultural and economic life of New York City and the need for the protection of loft space suitable for their working and living purposes. At the same time the bill upholds the commitments of the City to the business and labor community to protect areas dominated by business activity and to provide a favorable business climate” (Mem of Legis Rep of City of NY, 1982 McKinney’s Session Laws of NY, at 2484).
 
 [3]
 

 The law relies on a “building by building approach to resolve the illegal residential status of loft buildings formerly or presently used as manufacturing, warehousing, or commercial space . . . [and] provides a framework for the legalization of these dwellings consistent with the local zoning resolution of the City of New York”
 
 (id.
 
 at 2479).
 

 The Loft Law therefore permits conversions of “Interim Multiple Dwellings,” which are defined as buildings or portions of buildings that were occupied at any time for manufacturing, commercial, or warehouse purposes and lack a residential certificate of occupancy
 
 (see
 
 Multiple Dwelling Law § 281 [1]). Critically, the statutory definition established a window period for eligibility encompassing only those units that, on December 1, 1981, were occupied for residential purposes since April 1, 1980 by three or more families living independently of one another
 
 (see id.).
 
 By adopting an eligibility period that was closed at the time of the enactment, the Legislature demonstrated its intent
 
 *493
 
 to provide the benefits of the Loft Law only to existing residential tenancies, not to encourage new conversions of loft space.
 
 [4]
 

 It is clear that tenants’ residential occupancies of the commercially-leased units are not within the purview of the Loft Law. The units were first used for residential purposes in 1997, almost two decades after expiration of the Loft Law eligibility window period. Tenants nevertheless urge that their illegal conversions are entitled to protection under the ETPA, relying on the broad language and scope of that Act.
 

 Reading the ETPA and Loft Law together, we agree with the courts below that tenants’ illegal conversions do not fall under the ambit of the ETPA. As reflected in the legislative history and intent of the Loft Law, the fixed eligibility period was designed to address the public safety and municipal zoning emergency caused by the expansion of illegal conversions at that time (see
 
 id.
 
 § 280;
 
 Lower Manhattan Loft Tenants,
 
 66 NY2d at 305). The statute was not intended to foster future illegal conversions or undermine legitimate municipal zoning prerogatives. If the prior-enacted ETPA already protected illegal residential conversions of manufacturing space, significant portions of the Loft Law would have been unnecessary
 
 (see e.g.
 
 Multiple Dwelling Law § 286 [3]). Thus, although such illegal conversions are not expressly exempted from ETPA coverage, it is evident that the Legislature did not view the ETPA as safeguarding the interests of the “loft pioneers”
 
 (see
 
 Mem of Legis Rep,
 
 supra
 
 at 2484).
 

 Notably, the City has not acted to amend the Zoning Resolution to include purely residential use of M1-5B zoned space or to rezone tenants’ neighborhood. Similarly, the Legislature has not adopted a new eligibility period that would confer Loft Law protections on later conversions. Such steps could make residential loft units like tenants’ legal or capable of being legalized, if such a change were deemed necessary or desirable. We therefore conclude that the ETPA cannot be extended to these illegally converted lofts.
 

 We have considered tenants’ remaining arguments and conclude that they are without merit.
 

 
 *494
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Read and R.S. Smith concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . The Zoning Resolution restricts the definition of “artist” to include only those persons so certified by the City Department of Cultural Affairs.
 

 [2]
 

 . Given its posture on the summary judgment motion, landlord did not raise the alternative argument that the units were, in any event, exempt from ETPA coverage under one of the statutory exceptions (see McKinney’s Uncons Laws of NY § 8625 [ETPA § 5]). As such, any argument to that effect is not preserved for this Court’s review.
 

 [3]
 

 . The Loft Law has been amended several times to extend its termination date. Currently, the law is set to expire on June 30, 2004 (see L 2004, ch 98 [amending L 1982, ch 349, § 3]).
 

 [4]
 

 . The statute requires owners of qualified units to take specific steps to legalize the residential uses or be subject to penalties
 
 (see
 
 Multiple Dwelling Law § 284). Once compliance with safety and fire protection standards is achieved, owners may recover rents payable from residential occupants
 
 (see id.
 
 § 285). In addition, the article provides numerous protections to tenants, including ETPA coverage where appropriate
 
 (see id.
 
 § 286).