[866 NYS2d 275]

John Caldwell et al., Appellants-Respondents, v American Package Company, Inc., Respondent-Appellant.

Second Department, October 21, 2008

## APPEARANCES OF COUNSEL

*Goodfarb & Sandercock, LLP*, New York City (*Margaret B. Sandercock* of counsel), for appellants-respondents.

*Borah, Goldstein, Altschuler, Nahins & Goidel, P.C.*, New York City (*Jeffrey R. Metz* of counsel), for respondent-appellant.

## OPINION OF THE COURT

SPOLZINO, J.P.

The plaintiffs, John Caldwell and Desiree Konian, reside, pursuant to a commercial lease, in a commercial building for which there is no residential certificate of occupancy. The building is owned by the defendant American Package Company, Inc.

Caldwell and Konian (hereinafter the tenants) asked the Supreme Court to declare that even though their lease is commercial, their tenancy is nevertheless subject to the protections of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended [McKinney's Uncons Laws of NY § 8621 *et seq.*]), the Rent Stabilization Law (Administrative Code of City of NY § 26-501 *et seq.*), and the Rent Stabilization Code (9 NYCRR 2520.1-2531.9) (hereinafter collectively ETPA) because the unit had been improved for residential occupancy prior to the date of the lease, the tenants took occupancy in response to an advertisement for residential occupancy, and American Package (hereinafter the owner) knowingly permitted multiple residential tenancies in the building. The tenants would nevertheless have us deny the owner the value of use and occupancy of the premises because the unit does not have a valid residential certificate of occupancy.

The owner, for its part, seeks to eject the tenants from the premises on the ground that they have violated the terms of the commercial lease and failed to pay rent. The owner also asks, however, that we enforce the tenants' obligation under the lease to pay rent for the time that they have occupied the premises.

We conclude that the tenants are not entitled to ETPA protection, and the owner is not entitled to the value of use and occupancy. Since a *Yellowstone* injunction (*see First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630 [1968]) was properly issued by the Supreme Court, however, the owner's entitlement to a judgment of ejectment must await the expiration of the period within which the tenants may cure the alleged breach. We modify the order of the Supreme Court accordingly.

The tenants took occupancy of the premises in Brooklyn pursuant to a lease dated January 28, 2003. The lease provides that the premises would be used for "computer services and design studio provided such use is in accordance with the certificate of occupancy for the building, if any, and for no other purpose," and that the tenant "shall make no changes in or to the demised premises of any nature without Owner's prior written consent." The lease also provides that the "[t]enant will not at any time use or occupy the demised premises in violation of the certificate of occupancy issued for the building of which the demised premises are a part."

In July 2005 the owner served the tenants with a notice to cure their default, asserting that they had violated the terms of the lease by, among other things, altering the unit to permit residential use, residing in it as such, and failing to pay rent. In response, the tenants commenced this action, seeking a judgment declaring that their tenancy is subject to ETPA and that, as such, the owner is required to provide them with a renewal lease and to register the building as a multiple dwelling. The tenants seek, in addition, an injunction prohibiting the owner from terminating their tenancy or demanding rent except in accordance with ETPA, a declaration that the owner is prohibited from collecting rent from the tenants "so long as the certificate of occupancy for the premises is not for residential use," a rent abatement due to the "extraordinary noise, cigarette smoke and other odors" and the "unsanitary conditions" in the unit below them, an order requiring the owner to take legal action against the occupants of the unit below them to remedy the nuisance, and an attorney's fee and litigation expenses.

The owner answered, admitting that the premises are subject to a commercial certificate of occupancy and that they were being occupied residentially, but otherwise denying the material allegations of the complaint. The owner counterclaimed for a judgment declaring that the tenancies are not subject to rent regulation, enjoining the tenant from altering the unit, continu-

ing to reside in it or sublet it, and directing the tenant to restore the unit to its prior condition, as well as a money judgment in an amount equivalent to unpaid rent under the lease, or alternatively, for ejectment, and an award of an attorney's fee and litigation costs.

Immediately upon commencing the action, the tenants moved for a *Yellowstone* injunction, permitting them a reasonable opportunity to cure any alleged defaults and prohibiting the owner from taking any action to evict them during that period. The owner cross-moved, in effect, for summary judgment declaring that the apartment is not subject to ETPA, that it may collect the value of use and occupancy, and that it may terminate the tenants' residency in the apartment. The owner also sought summary judgment dismissing the remainder of the complaint, and on its counterclaims. The Supreme Court, in effect, granted that branch of the owner's motion which was for summary judgment declaring that the tenants' ETPA claims were without merit, but granted their motion for a *Yellowstone* injunction. The Supreme Court denied those branches of the owner's cross motion which were for ejectment and for an award of an attorney's fee, but granted that branch of the owner's separate motion pursuant to Real Property Law § 220 and RPAPL 749 (3) which was, in effect, for summary judgment on its counterclaim to recover the value of use and occupancy prospectively, from July 6, 2006, forward, pending resolution of the matter. The Supreme Court also denied those branches of the owner's cross motion which were for summary judgment dismissing the tenants' fourth cause of action, alleging that the conduct of the tenants in the unit below constituted a breach of the covenant of quiet enjoyment in the lease, and the fifth cause of action, alleging a nuisance.

The tenants appeal from so much of the order as granted that branch of the owner's cross motion which was, in effect, for summary judgment declaring that their claims for ETPA protection were without merit, and directed them to pay the value of use and occupancy. The owner cross-appeals from so much of the order as granted the tenants' motion for a *Yellowstone* injunction, denied those branches of its cross motion which were for summary judgment dismissing the fourth and fifth causes of action, awarded only a portion of the value of use and occupancy that it had sought, and denied those branches of its cross motion which were for ejectment and the award of an attorney's fee.

## I

We first consider whether the tenants' request for a *Yellowstone* injunction was properly granted.

> "A *Yellowstone* injunction maintains the status quo so that a commercial tenant, when confronted by a threat of termination of its lease, may protect its investment in the leasehold by obtaining a stay tolling the cure period so that upon an adverse determination on the merits the tenant may cure the default and avoid a forfeiture" (*Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc.*, 93 NY2d 508, 514 [1999]; *see First Natl. Stores v Yellowstone Shopping Ctr.*, 21 NY2d 630 [1968]).

We have traditionally held that

> "[a] tenant seeking *Yellowstone* relief must demonstrate that: (1) it holds a commercial lease, (2) it has received from the landlord a notice of default, notice to cure, or threat of termination of the lease, (3) its application for a temporary restraining order was made prior to expiration of the cure period and termination of the lease, and (4) it has the desire and ability to cure the alleged default by any means short of vacating the premises" (*Hempstead Video, Inc. v 363 Rockaway Assoc., LLP*, 38 AD3d 838, 839 [2007]).

Recently, however, we have extended the availability of *Yellowstone* injunctions to residential tenants (*see Hopp v Raimondi*, 51 AD3d 726 [2008]).

■ The tenants satisfied each of these requirements. They are residential tenants occupying the premises pursuant to a lease that is commercial in form. The owner served a notice of default asserting that the tenants had breached the lease by altering the unit to permit residential use, by residing in it as such, and by failing to pay rent. Their motion for a *Yellowstone* injunction was made prior to the expiration of the cure period provided for in the lease and they are able to cure the alleged defaults by restoring the premises to its original condition, using it only for commercial purposes and paying rent as required by the lease. The Supreme Court therefore correctly granted the tenants' motion for a *Yellowstone* injunction.

## II

The legal issues raised by the conversion of commercial premises to residential use are not new in New York. This ap-

peal, in fact, comes to us in what appears to be a second round of such conversions—the venue now being Brooklyn, rather than Manhattan. The first round ended only after the Legislature passed the Loft Law (Multiple Dwelling Law art 7-C), which permitted the conversion of residentially-occupied commercial and industrial buildings to lawful residential use under certain conditions and established a Loft Board to adjudicate, at least in the first instance, disputes arising under the law (*see generally* 12 NY Jur 2d, Buildings § 28; 3 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 43.29 [4th ed]). The Loft Law applies, however, only to units that were occupied for residential purposes on April 1, 1980 (*see* Multiple Dwelling Law § 281 [1]). Since the unit at issue here was not so occupied at that time, the Loft Law does not resolve this controversy.

Ineligible for protection under the Loft Law, the tenants seek protection for their tenancies under ETPA. Since the City of New York has declared a housing emergency, ETPA would ordinarily apply to any housing accommodation in the City that is not expressly excepted from coverage (*see Matter of Gracecor Realty Co. v Hargrove*, 90 NY2d 350, 355 [1997]; *Matter of Salvati v Eimicke*, 72 NY2d 784, 791 [1988]; Emergency Tenant Protection Act of 1974 §§ 3, 5 [McKinney's Uncons Laws of NY §§ 8623, 8625]). In *Wolinsky v Kee Yip Realty Corp.* (2 NY3d 487 [2004]), however, the Court of Appeals held, after considering the interplay of the Loft Law and ETPA, that "illegal conversions do not fall under the ambit of the ETPA" (*Wolinsky v Kee Yip Realty Corp.*, 2 NY3d at 493). That is precisely the situation presented here.

Despite the seeming lack of ambiguity in this holding, however, courts have since struggled to determine whether *Wolinsky's* rejection of ETPA protection for these conversions is absolute. The dispute centers on two statements in the *Wolinsky* opinion, the first of which refers to the Appellate Division as having "rejected tenants' request for ETPA protection, holding that the Act 'does not extend to tenancies that are illegal and incapable of becoming legal' (302 AD2d 327, 328 [1st Dept 2003])" (*Wolinsky v Kee Yip Realty Corp.*, 2 NY3d at 491), and the second at the conclusion of the opinion, mentioning that legislative changes could have made the subject premises "legal or capable of being legalized" (*Wolinsky v Kee Yip Realty Corp.*, 2 NY3d at 493).

Based upon this, the Appellate Division, First Department, has held that where it "appears that the unit is capable of being

legalized, [it] may therefore be subject to rent stabilization" (*Duane Thomas LLC v Wallin*, 35 AD3d 232, 233 [2006]), a position to which it has since adhered (*see 142 Fulton LLC v Hegarty*, 41 AD3d 286, 288 [2007]). As a result, the courts in that Department, and some in this, have repeatedly held that rent stabilization under ETPA may apply where the unit is capable of legalization and the owner knew of or acquiesced in the tenant's conversion to residential use (*see Dafna LLC v Samara Sussman & Oscar Alzate*, 19 Misc 3d 1121[A], 2008 NY Slip Op 50801[U] [2008]; *80 Varick St. Group LP v Nichols*, 18 Misc 3d 1132[A], 2008 NY Slip Op 50267[U] [2008]; *37 W. Realty Co. v Horacio F. Salinas Photography Co.*, 16 Misc 3d 1122[A], 2007 NY Slip Op 51546[U] [2007]; *142 Fulton LLC v Hyatt*, 14 Misc 3d 1223[A], 2007 NY Slip Op 50133[U] [2006]; *480-486 Broadway, LLC v No Mystery Sound, Inc.*, 11 Misc 3d 1056[A], 2006 NY Slip Op 50236[U] [2006], *affd* 16 Misc 3d 137[A], 2007 NY Slip Op 51730[U] [2007]; *Korean Am. Assoc. of Greater N.Y. v Katsukawa*, NYLJ, May 23, 2001, at 20, col 2 [Civ Ct, NY County, Evans, J.]).

We have addressed this issue twice. In *Gloveman Realty Corp. v Jefferys* (18 AD3d 812 [2005]), we held, on the authority of *Wolinsky* and without further elaboration, that the defendants' tenancies in the illegally converted lofts at issue were not subject to ETPA. We did so despite the fact that the owner had knowledge of and acquiesced in the tenants' conversion of the space for residential use, and the applicable zoning law did not prohibit residential use (*see Gloveman Realty Corp. v Jefferys*, 2003 NY Slip Op 30084[U] [2003]).

More recently, in *Matter of 315 Berry St. Corp. v Hanson Fine Arts* (39 AD3d 656 [2007]), we held, relying upon the decision of the Appellate Division, First Department, in *Duane Thomas,* that ETPA protection was available to a converted commercial unit, despite the illegality of the conversion, where "it was undisputed that the [owner] nevertheless knew of and acquiesced in the unlawful conversion, [undertaken] at the expense of the occupants, of the unit from commercial to residential use, that the applicable zoning generally permits residential use, and that the [owner] sought legal authorization to convert the premises to such use during the pendency of [the] proceeding" (*Matter of 315 Berry St. Corp. v Hanson Fine Arts*, 39 AD3d at 657). Thus, in *315 Berry St.,* unlike *Gloveman,* the owner took affirmative steps during the pendency of the proceedings to lawfully convert the premises to residential use.

Viewing these holdings through the prism of *Wolinsky,* the conclusion is inescapable that the exception recognized in *315 Berry St.* is an extremely limited one, applying only in the par-

ticular circumstances described there. The *Wolinsky* court reached its conclusion that "illegal conversions do not fall under the ambit of the ETPA" (*Wolinsky v Kee Yip Realty Corp.*, 2 NY3d at 493) by recognizing that the Loft Law would have been unnecessary if protection for the residents of such premises was already available under ETPA. The Court of Appeals concluded on that basis that "the statute was not intended to foster future illegal conversions or undermine legitimate municipal zoning prerogatives" (*id.*). That the opinion went on to bolster this conclusion by citing the subsequent inaction of both the City and the State to extend such protections does not undermine its major premise that ETPA does not protect illegal loft occupants.

*315 Berry St.* presents the one situation in which, consistent with *Wolinsky,* ETPA protection can be recognized for illegally converted commercial premises. There, the owner acquiesced in the unlawful conversion, undertaken at the expense of the occupants, the premises were otherwise eligible for residential use by reason of the applicable zoning, and the owner, during the pendency of the proceeding in which the tenant sought ETPA protection, actually sought to legalize the residential use (39 AD3d at 657). In those circumstances, both parties, while aware that a claim of ETPA protection had been asserted, pursued a course leading to that end. We simply endorsed the status that each of the parties had sought. The broader exception the tenants seek here, which would recognize ETPA protection whenever a building owner has acquiesced in an illegal conversion that is merely "capable of being legalized," would be inconsistent with *Wolinsky's* declaration that ETPA protection is inapplicable to illegal conversions.

This appeal does not present a situation similar to that in *315 Berry St.* Although the complaint alleges, upon information and belief, that the owner "had obtained a map change permitting residential occupancy of the premises," the answer denies knowledge or information sufficient to form a belief as to that claim. In its cross motion for summary judgment, in effect, declaring that the tenants' ETPA claims are without merit, the owner argued that the tenants were liable for violations of their commercial lease and that the applicable zoning was irrelevant. The supporting affidavit of the owner's president, while averring that the building was zoned for "mixed use, and the unit does not have a residential certificate of occupancy," made no claim that the owner had taken measures during the pendency of these proceedings to seek legal conversion to residential use.

In opposition, the tenants' attorney asserted that "[r]eview of public records reveals that while this building is zoned commercial, the defendant owner applied for and obtained a map change permitting residential occupancy of the building." This conclusory assertion is not supported with copies of the referenced public records or any additional evidence that the owner had taken measures to alter the permissible use of the premises during the pendency of this proceeding. Thus, the tenants failed to raise a triable issue of fact with regard to the applicability of the narrow exception recognized in *315 Berry St.* to the circumstances here (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). The rule established in *Wolinsky*, and followed by this Court in *Gloveman*, requires that the tenants' request for a declaration that their tenancy is protected by ETPA be resolved against them.

## III

■ Multiple Dwelling Law § 302 prohibits the owner of a multiple dwelling for which there is no valid certificate of occupancy allowing residential use from collecting rent or the value of the use and occupancy of the premises. Our colleagues in the Appellate Division, First Department, have held, during the first round of loft cases, that a tenant may be equitably estopped from asserting Multiple Dwelling Law § 302 as a defense when the tenant knew or should have known that the tenancy was illegal (*see Lipkis v Pikus*, 72 AD2d 697 [1979], *affg op below* 99 Misc 2d 518 [1979]; *see also 61 W. 62nd Owners Corp. v Harkness Apt. Owners Corp.*, 173 AD2d 372 [1991]; *MMB Assoc. v Dayan*, 169 AD2d 422 [1991]; *Abright v Shapiro*, 92 AD2d 452, 453 [1983]). We reach a different conclusion.

The command of Multiple Dwelling Law § 302 (1) (b) is, by its terms, absolute. "An owner of a de facto multiple dwelling who fails to obtain a proper certificate of occupancy or comply with the registration requirements of the Multiple Dwelling Law cannot recover for rent or money for use and occupancy" (*Jalinos v Ramkalup*, 255 AD2d 293, 294 [1998]). Equitable relief from its strict application, however, is not foreclosed. In *Chatsworth 72nd St. Corp. v Rigai* (35 NY2d 984 [1975]), the Court of Appeals, adopting the opinion of then-Judge Beatrice Shainswit of the Civil Court of the City of New York (71 Misc 2d 647 [1972]), held that where the tenant had prevented the owner from obtaining a residential certificate of occupancy, Multiple Dwelling Law § 302 does not bar the collection of rent from the tenant.

The issue presented here, therefore, is not whether equitable relief from the strictures of Multiple Dwelling Law § 302 is available. *Chatsworth* establishes that it is. The issue, rather, is whether the availability of such relief extends beyond the situation in which the tenant has prohibited the owner from obtaining the necessary certificate, to encompass the situation presented here, in which the tenant merely knew or should have known that the residential tenancy was illegal. The conclusion reached by our colleagues in the Appellate Division, First Department, that it does turned on their view that "[h]aving entered into possession fully cognizant of the existing realities, tenants should not now be permitted to reap the benefits of occupancy and, at the same time, avoid the payment of rent" (*Lipkis v Pikus*, 99 Misc 2d at 520).

Although we have never been faced with this precise issue, we have nevertheless expressly addressed the equitable issue that is presented where one party to an arrangement that both knew at its inception to be illegal seeks, after performance has been rendered, to justify nonpayment on the basis of the illegality. In *Millington v Rapoport* (98 AD2d 765, 766 [1983]), an action by an unlicensed home improvement contractor, we held, over a vigorous dissent by then-Justice Titone, that "[t]he fact that the homeowner was aware of the absence of a license or even that the homeowner planned to take advantage of its absence creates no exception to the statutory requirement." We have adhered to that position since (*see Fisher Mech. Corp. v Gateway Demolition Corp.*, 247 AD2d 579, 581 [1998]; *Hughes & Hughes Contr. Corp. v Coughlan*, 202 AD2d 476, 477 [1994]).

The logic of *Millington* applies equally to the situation presented here. Like the licensing statute at issue in *Millington,* Multiple Dwelling Law § 302 represents a legislative determination that regulation of particular conduct is necessary. The public policy intended to be served by Multiple Dwelling Law § 302 was explicitly identified by the Legislature when it declared in adopting the provision that "the establishment and maintenance of proper housing standards requiring sufficient light, air, sanitation and protection from fire hazards are essential to the public welfare" (Multiple Dwelling Law § 2). The Legislature further decided to cast upon the owner the obligation to ensure compliance by expressly depriving the owner of any entitlement to rent or other remuneration in the absence of a certificate of occupancy. Short of a situation such as that presented by *Chatsworth,* where the tenant actually interfered with the owner's

attempt to legalize the premises, it would be inconsistent with the Legislature's command to shift this burden by estopping the tenant from relying on the statute as a defense. The Supreme Court erred, therefore, in awarding the owner the value of the use and occupancy of the premises pendente lite.

## IV

The remaining issues do not require extended discussion. An owner of a de facto multiple dwelling is entitled to a judgment of ejectment where the tenant occupies the premises in violation of the terms of the lease (see 99 Commercial St. v Llewellyn, 240 AD2d 481 [1997]). "[T]he absence of the certificate of occupancy does not bar the [owner] from recovering possession of the premises" (99 Commercial St. v Llewellyn, 240 AD2d at 483). Here, however, the owner has been properly enjoined from terminating the lease pending the outcome of this action, thereby tolling the cure period set forth in the notice of default. The purpose of such an injunction is to permit even a tenant that is unsuccessful in arguing that the lease has not been breached to cure the default and thereby avoid a forfeiture of the lease (see Graubard Mollen Horowitz Pomeranz & Shapiro v 600 Third Ave. Assoc., 93 NY2d at 514). Thus, although we have determined that the tenants' actions, which they did not dispute, constitute a default under the terms of the lease, the tenants are still entitled to the opportunity to cure their defaults as provided by the lease. Since the tenants can do that here, that branch of the owner's motion which was for summary judgment on its ejectment claim should have been denied until the cure period has passed without the tenants having effected a cure.

The tenants' claims under the fourth and fifth causes of action, based upon a breach of the covenant of quiet enjoyment and nuisance, should have been dismissed, however, since the tenants have been occupying the premises illegally (see Dave Herstein Co. v Columbia Pictures Corp., 4 NY2d 117 [1958]). Finally, although the lease entitles the owner to recover its attorneys' fees and litigation expenses where it is the prevailing party, its claim for such fees cannot be resolved until the conclusion of the litigation (see Elkins v Cinera Realty, 61 AD2d 828 [1978]).

In sum, the Supreme Court's determination that the tenants are not entitled to the protections of ETPA must stand, but its order must be modified so as to deny the owner's motion for

summary judgment on its counterclaim for the value of the use and occupancy of the premises, and to grant that branch of the owner's cross motion which was for summary judgment dismissing the tenants' causes of action alleging nuisance and a breach of the covenant of quiet enjoyment.

Accordingly, the order is modified, on the law, by deleting the provision thereof denying those branches of the owner's cross motion which were for summary judgment dismissing the tenants' fourth and fifth causes of action and substituting therefor a provision granting those branches of the cross motion, deleting the provision thereof granting that branch of the owner's motion pursuant to Real Property Law § 220 and RPAPL 749 (3) which was, in effect, for summary judgment on its counterclaim to recover the value of the use and occupancy of the premises from July 6, 2006, forward, and substituting therefor a provision denying that branch of the motion, and deleting the provision thereof, in effect, granting that branch of the owner's cross motion which was for summary judgment declaring that it is entitled to recover the value of use and occupancy for the duration of the tenants' residency and substituting therefor a provision, upon searching the record, awarding summary judgment to the tenants declaring that the owner is not entitled to recover the value of use and occupancy for the duration of the tenants' residency; as so modified, the order is affirmed insofar as appealed and cross-appealed from.

Since this is, in part, a declaratory judgment action, the matter must be remitted to the Supreme Court, Kings County, for the entry of a judgment declaring that the tenants' apartment is not subject to the protections of ETPA, and that the owner is not entitled to recover for the value of use and occupancy for the duration of the tenants' residency (*see Lanza v Wagner*, 11 NY2d 317 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]).

Miller, Dillon and McCarthy, JJ., concur.

Ordered that the order is modified, on the law, (1) by deleting the provision thereof denying those branches of the defendant's cross motion which were for summary judgment dismissing the plaintiffs' fourth and fifth causes of action and substituting therefor a provision granting those branches of the cross motion, (2) by deleting the provision thereof granting that branch of the defendant's motion pursuant to Real Property Law § 220 and RPAPL 749 (3) which was, in effect, for summary judgment on its counterclaim to recover the value of the use and oc-

cupancy of the premises from July 6, 2006, forward and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for the entry of a judgment declaring that the plaintiffs' apartment is not subject to the protections of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended [Mc-Kinney's Uncons Laws of NY § 8621 *et seq.*]), the Rent Stabilization Law (Administrative Code of City of NY § 26-501 *et seq.*), and the Rent Stabilization Code (9 NYCRR 2520.1-2531.9), and that the defendant is not entitled to recover the value of use and occupancy for the duration of the plaintiffs' residency.