OPINION OF THE COURT
Gary F. Marton, J.
*470 This is a holdover proceeding. Petitioner alleges that she is the landlord, that the premises is located in a one-family house, that the premises is not subject to rent regulation, and that she may regain possession thereof because the respondents’ tenancy has ended. Respondents interposed an answer asserting what are characterized as five defenses and four counterclaims. The first defense is that the premises is rent stabilized, the second is retaliatory eviction, the third is the failure to plead with sufficient specificity, the fourth is the absence of a certificate of occupancy, and the fifth is breach of the warranty of habitability; the first counterclaim is for rent overcharge and treble damages, the second is for retaliatory eviction, the third is for breach of the warranty of habitability, and the fourth is for an order to correct housing code violations.
Now, respondents move for summary judgment. As is stated in their notice of motion, respondents seek (a) dismissal of the proceeding on the ground that the premises is rent stabilized, (b) judgments on the first three counterclaims, and (c) an order to correct. The motion is denied and the proceeding is restored to the court’s calendar for trial on Monday, June 10, 2010 at 9:30 a.m.
Summary judgment must be “denied if any party shall show facts sufficient to require a trial of any issue of fact.” (CPLR 3212 [b].) Here, there are issues of fact which must be tried. For example, respondents assert both as a defense and as a counterclaim that petitioner brought this proceeding to retaliate against them for lodging complaints about, among other things, a lack of heat; however, petitioner avers that respondents destroyed the heating system. For another example, respondents assert as both a defense and a counterclaim that petitioner breached the warranty of habitability,[1] yet petitioner avers that respondents prevented her from making repairs. The court may not resolve these disputes on motion papers.
Also, respondents seek an order directing petitioner to cure housing code violations; yet the court file includes documents showing that on January 22, 2010 and March 1, 2010, respon *471 dents requested an inspection of the premises by the City of New York’s Department of Housing Preservation and Development (HPD), that inspections were scheduled for, respectively, February 17, 2010 and March 15, 2010, that different HPD inspectors[2] went to the premises on the scheduled dates, and that on each occasion the inspector reported that there were no violations because he was unable to gain access to the premises. Respondents do not address this issue. Moreover, the counterclaim here for an order to correct extant housing code violations “has no bearing on the outcome of this summary . . . proceeding and, therefore, [must be] severed from the proceeding (see, CPLR 407).” (City of New York v Candelario, 223 AD2d 617, 618 [2d Dept 1996].)
Respondents also assert that they have demonstrated as a matter of law that petitioner owns and operates as a single multiple dwelling both the building in which the premises is located and another building, that therefore that they have established that the premises is located in a horizontal multiple dwelling, that together the two buildings have at least six residential units, and therefore that rent-stabilization coverage under the Emergency Tenant Protection Act of 1974 (ETPA) (as added by L 1974, ch 576, § 4) has been triggered. Respondents show that the premises is located in one of two buildings on a real estate parcel, that petitioner owns the parcel, and that the City of New York designates the parcel on its tax map by a single lot number. Respondents also allege that the building in which the premises is located has three residential units and that the other building has four residential units and a ground-floor restaurant. Respondents also allege that both buildings receive heat, gas, hot water, and electricity from common sources. This, respondents argue, demonstrates as a matter of law that the number of residential units equals or exceeds six and therefore that the ETPA obtains here.
The court disagrees. The allegations concerning heat, gas, hot water, and electricity are set out in a conclusory fashion. One building has its entrance on Stockholm Street while the other has its entrance on Irving Avenue. Respondents characterize *472 the buildings as a front structure and a rear structure, but they do not state whether the buildings are attached, semi-attached, adjacent, or otherwise. Copies of photographs annexed as exhibits,[3] however, seem to show that the buildings are separated from each other by a distance which the court estimates at 20 feet. In addition, one photograph shows a van parked between the two buildings with several feet of space on either side of the van; from the photograph alone, one cannot rule out that the space is not simply a driveway into the parcel but instead is one end of a private street or alleyway that runs parallel to Irving Avenue for the length of the entire block. The court declines to hold that the moving papers demonstrate as a matter of law that the two buildings constitute a horizontal multiple dwelling.
Moreover, even if the court were to find that respondents had demonstrated as a matter of law that the two buildings constitute a horizontal multiple dwelling, the court’s analysis would not end there. Petitioner acknowledges that there are four residential units in the building in which the premises is not located, but she asserts that the building in which the premises is located is a single-family home and therefore that there are altogether fewer than the threshold number of six residential units. Petitioner allows that the single-family home has been divided into two residential units but argues that these units may not be counted toward the ETPA threshold of six because they are not only illegal but their illegality cannot be cured. Respondents acknowledge the premises’ illegality but they do not address the issue of whether the illegality can be cured other than by asserting that ETPA coverage obtains regardless.
In Wolinsky v Kee Yip Realty Corp. (2 NY3d 487 [2004]) the court held that “illegal conversions do not fall under the ambit of the ETPA” (at 493; see also Gloveman Realty Corp. v Jefferys, 18 AD3d 812 [2d Dept 2005]; Caldwell v American Package Co., Inc., 57 AD3d 15 [2d Dept 2008]). In Sheila Props., Inc. v A Real Good Plumber, Inc. (59 AD3d 424 [2d Dept 2009]) the court wrote that there might be an exception and ETPA coverage obtained for an illegal unit if, among other things, the landlord were seeking to legalize the premises. Implicitly, then, legalization would have to be legally permissible.
*473 Respondents bear the burden of establishing this affirmative defense of ETPA coverage but they make no showing that the premises can be legalized. Instead, they argue that since the ETPA is remedial, it should be read broadly to include all residential units not explicitly excluded from its coverage, that Wolinsky and its progeny should be read as confined to lofts and commercial tenancies, and that the health and safety concerns that underlie the Multiple Dwelling Law’s prohibition of illegal units ought not to inform the decision here.
This court disagrees. The health and safety concerns that underlie the Multiple Dwelling Law are no less important than the concern for the housing shortage that prompted the enactment of the ETPA. In Buck v Department of Hous. Preserv. & Deo. of City of N.Y. (133 Misc 2d 626 [App Term, 2d Dept 1986]) the issue was whether “buildings designed and intended to be used as two-family homes (private dwellings) can be unilaterally converted to multiple dwellings for single room occupants” (at 627) . The court held that such conversions were not permissible and reversed the lower court’s decision to legitimize “illegal conversions by landlords to overcrowded residences without any consideration for the ensuing danger to life and health” (at 627-628) . Arrow Linen Supply Co. Inc. v Cardona (15 Misc 3d 1143[A], 2007 NY Slip Op 51128[U] [Civ Ct, Kings County 2007]) concerned a three-family house that had been cut up into 10 single room occupancy units. The tenant moved for summary judgment on the ground that the premises had become rent stabilized, but the court denied this motion, held that the illegality precluded rent-stabilized status for the premises, and granted the landlord a judgment of possession. The court noted that
“[t]o allow the unsafe and hazardous conditions to continue to exist puts at risk not only the respondents occupying the premises, but also to firefighters and other public servants, as well as the residential units neighboring the subject premises. These risks are too substantial to countenance and are not in any way a condition that rent regulation . was designed to encourage or sustain.” (2007 NY Slip Op 51128DJ], *6.)
See also Del Gigante v Danilova (188 Misc 2d 240, 244-245 [Civ Ct, Bronx County 2001), where the court declined to dismiss on papers a summary holdover proceeding to recover possession of *474 an illegal rent-stabilized apartment as to which the curability of the illegality was not shown ([i]n weighing the equities it is clear that public policy compels this Court to place first and foremost the well-being of the tenant, the public and any firefighters or other emergency personnel that might be called to the premises if calamity struck. Whether legalization of the subject premises is a remedy available to the tenant is a question that can be determined in due course” [citation omitted]).
Accordingly, respondents’ motion for summary relief is denied.

. Breach of the warranty of habitability is a defense to a claim for rent; it is not cognizable as a defense to a holdover proceeding, and as a counterclaim it is severable (City of New York v Candelario, 223 AD2d 617 [2d Dept 1996]). In addition it is uncontested that the premises is located in an illegal multiple dwelling; therefore neither rent nor use and occupancy may be collected. (Multiple Dwelling Law § 302 [1] [b]; § 325 [2].) Petitioner did not cross-move for relief on these grounds, and the court will not at this juncture sua sponte strike this defense and sever the counterclaim.

. The reports identify the inspectors as Yakov Yuffe on the first date and Charles London on the second. Had they inspected and found that the premises was located in an illegal multiple dwelling (an allegation made by both petitioner and respondents), presumably they would have found a housing code violation therefor and issued the standard curative instruction, i.e., to discontinue the illegal use of the premises.

. Virtually none of the exhibits submitted in support of the summary judgment motion are in admissible form, yet “[t]o obtain summary judgment it is necessary that the movant establish his cause of action or defense ... by tender of evidentiary proof in admissible form.” (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979].)